FILED

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE NASHVILLE DIVISION 2026 JUL 23 PM 1: 52

| | | |
|---|---|---|
| DEVIN R. SCHULTZ, | ) | Case No. 3:26-cv- U.S. DISTRICT COURT MIDDLE DISTRICT OF TN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JUDGE _____ |
| THE METROPOLITAN GOVERNMENT | ) | |
| OF NASHVILLE AND DAVIDSON | ) | |
| COUNTY, TENNESSEE, | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S EMERGENCY EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION — SAME-DAY CONSIDERATION REQUESTED**

Pursuant to Federal Rule of Civil Procedure 65(b) and Local Rule 65.01, Plaintiff Devin R. Schultz respectfully moves this Court for an emergency temporary restraining order, to be considered on an expedited, same-day basis and — if necessary to prevent irreparable harm before the adverse party can be heard — ex parte, restraining Defendant Metro, together with its departments, boards, and commissions and all persons acting in concert or participation with it or under its authority, from:

1. entering, surveying, staking, clearing, grading, paving, constructing upon, or otherwise physically disturbing or being present upon the approximately 12.2-acre Environmentally Protected Area (the "EPA") owned by The Harpeth Crest Homeowners Association;

2. issuing, authorizing, permitting or failing to stop work on any activity affecting the EPA, including any grading, clearing or building permit predicated on the July 16, 2026 variances; and

1

3. giving effect or taking any action in reliance on the July 16, 2026 variances (the greenway variance and the bridge variance), whose effectiveness should be suspended pending final resolution.

Plaintiff further moves for a preliminary injunction to the same effect following an expedited hearing.

**Grounds for emergency, same-day consideration.** As set forth in the accompanying Memorandum, the Rule 65(b)(1)(B) Certification, and the Declaration of Devin R. Schultz:

1. This Court has already found — twice, on a developed record in No. 3:26-cv-00590 — that Plaintiff "demonstrated a likelihood of success on the merits of his constitutional claim and irreparable harm by the taking of his property," that "[t]he public interest favors property owners' right to protect their property," and that "[t]he balance of harms favors Schultz." Order, No. 3:26-cv-00590 (Doc. No. 53) at 3 (May 22, 2026) (Ex. 2).

2. The Court dismissed that action without prejudice on June 2, 2026 solely because the Commission had not yet made a final decision on the variance request. (Doc. No. 72 (Ex. 1).) On July 16, 2026, the Commission granted both variances, and Metro has since issued the Final Site Plan approval and the Grading Permit — completing the sequence Cypressbrook's principal swore would end with "construction will commence." (Novelli Decl., No. 3:26-cv-00590 Doc. No. 19, ¶¶ 14-15 (Ex. 22).) The ripening event the Court identified has occurred; the claims are ripe and accrued, and nothing further stands between the Commission's action and the physical destruction of the EPA.

3. The grant issued at a meeting of which the public received no lawful notice. The noticed July 9, 2026 meeting was "cancelled due to lack of a quorum," in the Commission secretary's own written words (Powers Decl. ¶¶ 4-5 & Ex. A thereto (Ex. 20)), and reset for July 16 — but

2

neither form of the ten-day advance notice Metro Code § 15.64.105 makes mandatory was ever given for the new date: no signs stating the July 16 date were posted (the standing signs directed the public to the cancelled July 9 date (Ex. 17)); no mailed notice was sent to the owners within 1,000 feet (Ex. 18); and Metro's own website still listed the July meeting as "July 9, 2026, 8:30 a.m." on the eve of the meeting (Ex. 25). Metro proceeded over Plaintiff's July 8 written demand (Exs. 16, 19) and with every Commissioner in receipt, individually and in writing, of the violations before the vote (Ex. 26); its counsel's on-the-record defense of the notice confessed the operative facts (Ex. 24). The meeting, and both variances granted at it, are ultra vires and void ab initio, as set out in the Memorandum and the Verified Complaint.

4.  The variances were the last administrative gate. Cypressbrook holds every other permit and approval (Ex. 9). The destruction the variances authorize — the Harpeth River bank and riparian buffer, dozens of mature trees, and the engineered North Main Channel stormwater conveyance — is permanent and cannot be remedied by any judgment.

5.  Restraint of Metro alone accords complete relief, and no restraint need name Cypressbrook. Cypressbrook's ability to enter the EPA derives entirely from Metro's authorizations, which are void ab initio, vest no rights in their recipient, and remain subject to Metro's continuing inspection, enforcement, and stop-work authority — authority Metro has already exercised against this very project (Ex. 10). In *Cedar Point Nursery v. Hassid*, the physical invasion was to be executed by private parties, yet the suit ran against the authorizing government and the remedy was suspension of the authorization. *Cedar Point Nursery v Hassid*, 594 U.S. 139, 149-52 (2021). Cypressbrook — which told this Court it uses Metro's claimed easement "on Metro's behalf" (Doc. No. 65-1 (Ex. 12) at 21) — is in any event bound by an order

3

binding Metro upon actual notice. Fed. R. Civ. P. 65(d)(2). And having procured the dismissal of No. 3:26-cv-00590 as premature until the Commission acted, Metro cannot now contend that the Commission's action placed the matter beyond restraint. *Knick v Township of Scott*, 588 U.S. 180, 184-85 (2019).

6.   Plaintiff is giving notice to the sole adverse party: contemporaneously with filing, Plaintiff is transmitting all papers by email to Metro's counsel of record in No. 3:26-cv-00590, as detailed in the Rule 65(b)(1)(B) Certification. Plaintiff will serve any order entered on the Commission through its counsel and on Cypressbrook's counsel immediately upon entry. Ex parte and same-day consideration is warranted because physical destruction can begin — and the status quo can be irretrievably destroyed — in less time than ordinary adversarial briefing would take. This Court entered comparable status quo relief the day after filing in No. 3:26-cv-00590. (Doc. No. 14 (Ex. 3).)

Plaintiff requests that any bond under Rule 65(c) be waived or set at a nominal amount for the reasons stated in the Memorandum.

This Motion is supported by the Verified Complaint, the Memorandum of Law in Support, the Declaration of Devin R. Schultz, the Declaration of Laura Powers, the Rule 65(b)(1)(B) Certification, and Exhibits 1-31 identified in the Master Exhibit List filed herewith.

Dated: July 23, 2026

Respectfully submitted,

**/s/ Devin R. Schultz**
Devin R. Schultz, Pro Se
BPR No. 024696
7348 River Bend Road
Nashville, Tennessee 37221
(615) 720-7838
devinschultz@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2026, contemporaneously with filing, a copy of the foregoing and all supporting papers was transmitted by email to counsel for Defendant Metro: Melissa Roberge, J. Brooks Fox, and Benjamin A. Puckett, Metropolitan Department of Law, counsel of record for Metro in No. 3:26-cv-00590 (melissa.roberge@nashville.gov; brooks.fox@nashville.gov; benjamin.puckett@nashville.gov.

/s/ Devin R. Schultz

5